359 S.E.2d 109

Homer ORR

v.

**The COUNTY COMMISSION OF CA-
BELL COUNTY, West Virginia, a Pub-
lic Corporation, and Ted T. Barr, Bill
Dunfee, and Roy Adams, Individually.**

No. 17033.

Supreme Court of Appeals of
West Virginia.

June 3, 1987.

Rehearing Denied July 16, 1987.

William L. Jacobs, Parkersburg, for appellant.

William T. Watson, Huntington, for appellee.

PER CURIAM:

This is an appeal by Homer Orr from a summary judgment order of the Circuit Court of Cabell County terminating an action instituted by the appellant against the County Commission of Cabell County and the individual members of that Commission. In the complaint the appellant charged the County Commission with tortiously interfering with a contract which he had with the Cabell Public Service District. In the course of the proceedings in the case he altered his position and asserted that the County Commission, by its action, unconstitutionally impaired the obligation of contract existing between him and the Public Service District. On appeal the appellant contends that the trial court improperly precluded him from developing his case by entering summary judgment. We disagree, and we affirm the judgment of the Circuit Court of Cabell County.

The record in this case indicates that the Cabell County Commission created the Cabell Public Service District to provide water service to certain residents of Cabell County. The Public Service District contracted with the appellant, a professional engineer, for engineering services required to construct a water-distribution system.

Prior to undertaking the planning and construction of the water-distribution system the Public Service District obtained a tentative commitment from the Farmer's Home Administration for a grant of $700,-000.00 and a loan of $894,000.00. The commitment was subject to extensive conditions and "project planning factors". Among the planning factors was a projection that construction of the project would cost $1,252.400.00.

The engineering-services contract between the Public Service District and the appellant established a complex compensation scheme to compensate the appellant for his engineering services. Among other things, the contract provided that the appellant would be compensated, in part, based on the actual construction cost of the project.

The appellant rendered extensive engineering services pursuant to his contract, and the Public Service District obtained a Certificate of Convenience and Necessity from the West Virginia Public Service Commission to operate the water system. The Certificate of Convenience and Necessity was issued with the view that the Public Service District would provide water service to 570 customers.

Bids were let for the construction of the project and were received on August 3, 1978. They far exceeded the estimates and "project planning factors" for the project. A second bidding procedure was conducted, and the second set of bids resulted in a low bid which exceeded available funding by $1,430,929.00.

After failing to receive a satisfactory construction bid as a result of the second bidding procedure the Public Service District proposed to divide the project into two phases. This, of necessity, reduced the number of people to be served initially, and an additional or amended Certificate of Convenience and Necessity from the Public Service Commission was necessary for the Public Service District to operate the redesigned water system. The Public Service District filed an application for an amended or additional certificate, and on September 26, 1980, the Public Service Commission rejected it.

Subsequently, in May, 1981, the Farmer's Home Administration cancelled its conditional commitment of funds to the Cabell Public Service District.

While the attempt was being made to finance and construct the water system, the citizens who were to have been served by it were apparently concerned about the delays. After the Public Service Commission refused to issue a revised Certificate of Convenience and Necessity in September, 1980, the County Commission of Cabell County scheduled a public hearing on the matter. At the hearing, conducted on December 10, 1980, many citizens affected by the failure of the Cabell Public Service District to provide water service expressed the opinion that the district's separate project should be abandoned, and that service should be provided by an expansion of an existing and functioning public service district, the Salt Rock Public Service District.

After the public hearing the Cabell County Commission, on December 17, 1980, entered an order which simultaneously reduced the geographical boundaries of the Cabell Public Service District so that it covered only one square foot of land and expanded the boundaries of the Salt Rock Public Service District to cover the area taken from the Cabell Public Service District.

Following the entry of the Commission's order the appellant filed the present proceeding alleging that in reducing the Cabell Public Service District's boundaries the Commission had tortiously interfered with his contract with the Public Service District. He also claimed that the Public Service District was the County Commission's agent and that the Commission was responsible for the agent's contract.

After the filing of the complaint, the appellant filed a motion for summary judgment which was supported by an affidavit setting forth the pertinent facts of the case. The County Commission filed no counter-affidavit denying the facts set forth in the plaintiff's motion for summary

judgment, but it moved for summary judgment on the ground that the complaint failed to state a cause of action and also on the ground that there were no genuine issues as to any material fact.

Following the filing of the respective motions, the Circuit Court, without taking evidence, heard the arguments of counsel for the respective parties, denied the appellant's motion and granted the Commission's motion. It is from that ruling that the appellant now appeals.

In the complaint instituting this action, the appellant alleged that the defendants had intentionally and maliciously interfered with the contract that he had with the Cabell Public Service District. In that complaint he made no mention of the action of the County Commission rising to a constitutional level. The specific complaint language stated:

> The Defendants intentionally and maliciously interfered with the contract between Plaintiff and the Cabell PSD when, on or about November 12, 1980, the Defendant Commission by order reduced the designated area of service of the Cabell PSD to one square foot, thereby destroying the ability of the Cabell PSD to generate revenue from its service area.

In the course of the proceedings in the case, the appellant progressively moved away from the legal position that the defendants intentionally and maliciously interfered with his contract and moved toward the position of asserting that the County Commission, by its action, had violated constitutional provisions prohibiting a state impairing the obligations of contract. In his petition for appeal, he assigned as error the fact that the trial court had denied his motion for summary judgment without receiving any proof. He also focused on the impairment of contract issue and argued that:

> The Defendants, acting as an instrumentality of the State, clearly and admittedly impaired the contractual obligation to the Plaintiff of the District it created and in, an effort to escape that obligation illegally reduced the size of the district to

virtual extinction. The Constitutions of the United States and of the State of West Virginia prohibit any such trifling with contracts and, therefore, the Defendants are liable for such contract with the Plaintiff and for the obligation thereunder for services rendered in good faith by the Plaintiff pursuant to said contract.

█ It has been recognized that the Contract Clause does not create an absolute prohibition against State action impairing contracts. It prohibits unreasonable impairment only. As recently stated in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983):

> Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State "to safeguard the vital interests of its people." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1934).

*See United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), *reh'g denied*, 431 U.S. 975, 97 S.Ct. 2942, 53 L.Ed.2d 1073 (1977); *City of El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), *reh'g denied*, 380 U.S. 926, 85 S.Ct. 879, 13 L.Ed.2d 813 (1965). The modern view is perhaps most succinctly set forth by the Supreme Court in the case of *City of El Paso v. Simmons, supra*, 379 U.S. at 508, 85 S.Ct. at 583, 13 L.Ed.2d at 454:

> The decisions "put it beyond question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula," as Chief Justice Hughes said in *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398, 428, 54 S.Ct. 231, 236 [78 L.Ed. 413 (1934)]. The *Blaisdell* opinion, which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that "[n]ot only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the

state also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end 'has the result of modifying or abrogating contracts already in effect.' *Stephenson v. Binford*, 287 U.S. 251, 276, 53 S.Ct. 181, 189, 77 L.Ed. 288. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. * * * This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court." 290 U.S., at 434–435, 54 S.Ct., at 238–239.... The State has the "sovereign right * * to protect the * * * general welfare of the people * * *."

■ In the case presently under consideration, this Court questions whether the action of the County Commission constituted an impairment of contract within the constitutional prohibition.[1] However, even if the County Commission's actions did constitute an enactment of a law within the constitutional provision, this Court believes that the act of reducing the area of the Public Service District by the County Commission was impelled by a pressing public concern for the welfare of the people within the area of the original Cabell Public Service District. The purpose of the Public Service District was to provide water service to those people. By the time the County Commission acted, it was patently clear that because of the financial impracticality of constructing the water system which the

Public Service District proposed, the Public Service District could not provide the water service initially anticipated. This Court believes that the provision of water service is a matter which affects the welfare of the potential recipients of that service. It also appears that in reducing the size of the Public Service District the County Commission acted to promote the welfare of the people and the Commission's act did not amount to an unconstitutional act.

■ The fundamental rule for determining when summary judgment should be granted in West Virginia is set forth in syllabus point 4 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

> If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact.

In the case presently under consideration, there does not appear to be a genuine issue as to any material fact. The parties essentially agree that there was a contract between the appellant and the Cabell Public Service District, that the appellant provided services under that contract, and that the County Commission ultimately reduced the size of the Public Service District. The facts as developed rather clearly show that financial circumstances rendered it impossible for the Public Service District to develop the water system as planned at the time of the execution of the contract between

---

1. The constitutional prohibition applies to the enactment of laws by governmental bodies. Whether the County Commission's reduction of the area of the Cabell Public Service District was such an enactment or a simple administrative act is a debatable question. Clearly the Commission's action was not directed directly at the contract between the appellant and the Public Service District and did not affect the appellant's right to sue the District. The only practical effect was possibly to reduce the appellant's potential ability to recover damages. However, in even that regard, in the Court's view, the effect was minimal. Even before the Commission's action, the ability of the appellant to recover was severely impaired. It appears

that at no point did the Public Service District own substantial assets. It merely had a commitment from the Farmer's Home Administration for a loan and grant if it could create a water system in accordance with certain guidelines, and the right, granted by the Public Service Commission, to charge fees for water service if it managed to create the system. Before the County Commission acted, the Farmer's Home Administration withdrew its commitment, and the Public Service Commission withdrew its authorization for the District to charge fees. It appears that at the time of the County Commission's action, all the Public Service District had was the remote possibility that it might in the future create a water system.

the appellant and the Public Service District.

In view of the fact that the Commission's action, in this Court's opinion, did not constitute a constitutionally impermissible impairment of contract, and in further view of the provisions of syllabus point 4 of the *Aetna* case, this Court does not conclude that the trial court committed reversible error by entering the summary judgment rendered in this case.

The judgment of the Circuit Court of Cabell County is, therefore, affirmed.

Affirmed.